UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUKHDEEP SINGH,<br><br>                        Plaintiff,<br>        v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; MATTHEW D. EMRICH; JENNIFER B. HIGGINS; TED H. KIM; ALEJANDRO MAYORKAS; PATRICIA MENGES; and CONNIE NOLAN,<br><br>                        Defendants. | **MEMORANDUM AND ORDER**<br>24-cv-3003 (LDH) |

LASHANN DEARCY HALL, United States District Judge:

Sukhdeep Singh ("Plaintiff") brings this action against the U.S. Citizenship and Immigration Services ("USCIS"), Associate Director of the Fraud Detection and National Security Directorate Matthew D. Emrich, Director of USCIS Jennifer B. Higgins, Associate Director for Refugee, Asylum, and International Operations Ted H. Kim, Secretary of Homeland Security Alejandro Mayorkas, Director of the New York Asylum Office Patricia Menges, and Associate Director of Service Operations for USCIS Connie Nolan (collectively, "Defendants"), pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., and the Mandamus Act, 28 USC § 1361.  Plaintiff alleges that Defendants unduly delayed the adjudication of his Form I-589 Application for Asylum and Withholding Removal ("I-589"). Plaintiff seeks a declaration that Defendants' "last-in-first-out" ("LIFO") policy for scheduling asylum interviews violates the APA and a writ of mandamus compelling Defendants to make a

determination on his asylum application.  Defendants move pursuant to Federal Rule of Civil

Procedure 12(b)(6) to dismiss all claims against them.[1]

## BACKGROUND[2]

Individuals who suffer persecution or a fear of persecution in their home country due to

their race, religion, nationality, membership in a particular social group, or political opinion may

come to the United States to apply for asylum.  Once an asylum application is submitted, an

asylum applicant is entitled to several benefits during the pendency of their application,

including protection from removal, receipt of employment authorization documents, and travel

authorization.  *See* 8 C.F.R. §§ 1.3(a)(5), 208.7(a)(1), 212.5(f).  In January 2018, USCIS

reinstated a previously established LIFO policy for scheduling affirmative asylum interviews, in

an effort to "deter individuals from using the asylum backlog solely to obtain employment

authorization by filing frivolous, fraudulent, or otherwise non-meritorious asylum applications."

(*Affirmative Asylum Interview Scheduling*, USCIS (last visited Mar. 14, 2025),

https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-

scheduling ("USCIS Scheduling Policy"); Compl. ¶ 27, ECF No. 1.)[3]  Pursuant to the LIFO

policy, USCIS schedules asylum interviews such that first priority goes to applications that had

---

[1] Defendants' motion papers indicate that they seek dismissal of Plaintiff's claims pursuant to Fed. R. Civ. Proc. 12(b).  The Court interprets this as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

[2] The following facts are taken from the complaint and are assumed to be true for the purpose of deciding the instant motion.

[3] "When considering a motion made pursuant to Rule 12(b)(6), [the Court] may take judicial notice of documents from official government websites."  *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) (internal citations and quotations omitted); *see also Mu v. United States Citizenship & Immigr. Servs.*, No. 23-CV-02067, 2023 WL 4687077, at *2 (E.D.N.Y. July 22, 2023) ("[T]he Court takes judicial notice of the facts that Defendant adjudicates asylum applications on a LIFO basis and makes available a process through which asylum seekers can request to expedite their applications . . . as described on government websites.").

been scheduled for interviews but had to be rescheduled by either the applicant or USCIS, second priority goes to applications that have been pending for 21 days or less, and third priority goes to the remaining pending affirmative asylum applications in the backlog, which are processed in reverse chronological order. (*Id.*) The USCIS Scheduling Policy adds that "[a]sylum office directors may consider, on a case-by-case basis, an urgent request to be scheduled for an interview outside of the priority order" and that applicants seeking this relief must "submit any urgent interview scheduling requests in writing" to the applicable asylum office. (USCIS Scheduling Policy.) On March 29, 2024, USCIS modified their scheduling prioritization policy to add "a second, simultaneous interview scheduling track," a "first-in, first-out" ("FIFO") system whereby some asylum officers are assigned to process applications that are in the backlog in chronological order, beginning with the oldest applications. (*Id.*; *see also* Decl. of John Elliot ¶ 9, ECF No. 9-1.) Plaintiff alleges that, due to the LIFO policy, Plaintiff's asylum application "has been placed in a de facto indefinite suspension and may never be adjudicated by USCIS." (*Id.* ¶ 4.)

Plaintiff came to the United States on November 9, 2018, to seek asylum and escape political persecution in India. (Compl. ¶¶ 2, 22.) Upon his arrival, Plaintiff was placed in removal proceedings before the Executive Office for Immigration Review ("EOIR") and was determined to be removable. (*Id.* ¶¶ 3, 23.) Plaintiff filed a defensive I-589 application for asylum and subsequently remained in removal proceedings for nearly four years. (*Id.*) Plaintiff's removal proceedings terminated on May 23, 2022, with the EOIR holding that Plaintiff could affirmatively file his application for asylum rather than adjudicate the claim in the EOIR. (*Id.* ¶ 3.) Plaintiff filed an affirmative I-589 application on August 5, 2022. (*Id.*)

Plaintiff seeks mandamus relief and raises four causes of action, alleging that USCIS's LIFO policy (1) violates the APA by unreasonably delaying agency action on his asylum application, (2) exceeds statutory authority under the APA, (3) is not in accordance with the law as required by the APA, and (4) is arbitrary and capricious in violation of the APA. (*Id.* ¶¶ 31–57.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

## I.    Mandamus Act Claim[4]

"[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" *Escaler v. USCIS*, 582 F.3d 288, 292

---

[4] The question of whether the three requirements for a writ of mandamus is a jurisdictional or merits inquiry remains an open question in this circuit. *See City of New York v. United States Postal Serv.*, 519 F. Supp. 3d 111, 127 n.9 (E.D.N.Y. 2021) ("It is not always clear whether a failure to satisfy the elements of a mandamus claim under § 1361 warrants dismissal for lack of jurisdiction or for failure to state a claim."). Because Defendants do not specify

(2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).  The "exercise of the power of mandamus is a matter committed to the sound discretion of the [trial] court." *Pesantez v. Johnson*, No. 15-CV-1155, 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) (quoting *Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir. 1974)).  However, before the Court may exercise the power of mandamus, a plaintiff must show "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (citation and internal quotations omitted).  Defendants argue that Plaintiff is not entitled to mandamus relief because Plaintiff cannot show that he has a "clear right" to the immediate adjudication of his asylum application, nor can he show that there is no other adequate remedy available.  (Defs.' Pre-Motion Conference ("PMC") Ltr. at 2, ECF No. 6.)[5] The Court agrees.

Courts in this circuit, including this Court, have routinely held that asylum applicants do not have a "clear right" to the immediate adjudication of their asylum application.  *See Ngai v. Mayorkas*, No. 22-CV-5358, 2024 WL 1346530, at *2 (E.D.N.Y. Mar. 29, 2024) (citing *Baisheng Chen v. Wolf*, No. 19-cv-9951, 2020 WL 6825681, at *3 (S.D.N.Y. Nov. 20, 2020)) (holding that a plaintiff does not have a clear right to prompt adjudication of their asylum application); *see also He v. Garland*, No. 23-CV-05386, 2024 WL 3708146, at *2 (E.D.N.Y. Aug. 7, 2024) (same);

whether they seek dismissal of Plaintiff's Mandamus Act claim for lack of subject matter jurisdiction or for failure to state a claim, the Court will treat the mandamus requirements as elements necessary to satisfy Plaintiff's claim.

[5]On July 2, 2024, Defendants moved for a pre-motion conference in anticipation of their motion to dismiss.  (ECF No. 6.)  Consistent with the Court's Individual Practices III.A.3–4, Defendants filed a letter providing a synopsis of their anticipated arguments, including relevant legal authority.  (*Id.*)  Plaintiff timely filed his opposition letter.  (ECF No. 7.)  On July 16, 2024, the Court granted Defendants' request for a pre-motion conference.  (*See* July 16, 2024 Order.)  However, on August 9, 2024, the Court adjourned the scheduled pre-motion conference *sine die* and advised that it would consider Defendants' motion to dismiss based on the parties' pre-motion conference submissions.  (*See* August 9, 2024 Order.)  The Court further directed Defendants to file a notice of motion and permitted the parties to file supplemental submissions, not exceeding five pages in length.  (*Id.*)

*Zheng v. Garland*, No. 22-CV-6039, 2024 WL 333090, at *4 (E.D.N.Y. Jan. 29, 2024) (same). Thus, as this Court previously concluded in *Ngai v. Mayorkas*, Plaintiff does not possess a clear right to the relief he seeks from the Court.  2024 WL 1346530, at *2.  Plaintiff fails to direct the Court to any case law to the contrary.  (*See* Pl.'s PMC Resp. Ltr. at 4-5, ECF No. 7.)  This alone defeats Plaintiff's Mandamus Act claim.

Nevertheless, even if Plaintiff could articulate a clear right to the immediate adjudication of his asylum application, Plaintiff fails to allege that no other adequate remedy is available. Indeed, as Defendants argue, Plaintiff has two alternative remedies available.  (Defs.' Supp. Ltr. at 2, ECF No. 9.)  *First*, as this Court has previously held, the expedited review process offered under USCIS's policy amounts to an adequate alternative remedy.  *Ngai*, 2024 WL 1346530, at *2 (holding that the USCIS's procedure that allows expedition for emergencies and urgent humanitarian reasons is an adequate alternative remedy); *see also He*, 2024 WL 3708146 at *2 (same).  *Second*, even absent the USCIS's expedited review process, Plaintiff has an adequate remedy available under the APA—a remedy Plaintiff seeks in this very action.  *Ngai*, 2024 WL 1346530, at *2 ("[P]laintiffs have a private right of action to compel agency action that is unreasonably delayed under the [APA]"); *see also Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 226 (E.D.N.Y. 2021) ("[I]n the event that Plaintiffs *did* have a clear right to an immediate adjudication and Defendants *did* have a clear duty to adjudicate within a specified time frame, Section 706(1) of the APA would provide Plaintiffs with an adequate remedy. (emphasis in original)).

For these reasons, Plaintiff's claim for relief under the Mandamus Act must be dismissed.

## II.    APA Claims

### A.  Unreasonable Delay

Under the APA, a court may compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  The mere passage of time, alone, is not sufficient to sustain a claim for unreasonable delay. *INS v. Miranda*, 459 U.S. 14, 18 (1982) ("Although the [length of time that the INS took to process respondent's application] was indeed long, we cannot say in the absence of evidence to the contrary that the delay was unwarranted.").  Therefore, Plaintiff maintains the burden of plausibly alleging that, other than the passage of time, the Court has a basis to conclude that the process of adjudicating his application has been unreasonably prolonged. *See Ahmed v. Bitter*, No. 23-CV-189, 2024 WL 22763, at *8 (E.D.N.Y. Jan. 2, 2024) ("The burden is on the Plaintiff to plausibly allege unreasonable delay, and 'other than the passage of time, Plaintiff has given the court no basis on which to conclude that the process of adjudicating her petition has been unreasonably prolonged or delayed.'" (quoting *Almakalani*, 527 F. Supp. 3d at 225) (alterations omitted)).

To determine whether an agency's delay in adjudicating an application is unreasonable, courts assess six factors set forth in *Telecommunications Rsch. & Action Ctr. v. F.C.C.* ("*TRAC*"), (the "*TRAC* factors") 750 F.2d 70, 80 (D.C. Cir. 1984).  These factors are:

> (1) the time agencies take to make decisions must be governed by 'a rule of reason'; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* (citations omitted).  Defendants argue that the *TRAC* factors weigh in favor of a finding that Plaintiff fails to state a claim of unreasonable delay in violation of the APA.  (Defs.' PMC Ltr. at 2–3; Defs.' Supp. Ltr. at 3–5.)  The Court agrees.[6]

The first *TRAC* factor directs courts to examine whether "the time agencies take to make decisions" is governed by a "rule of reason."  *TRAC*, 750 F.2d at 80.  Importantly, "rules of reason are not judged on whether they provide the best solution to a problem, but whether they constitute a reasoned attempt to address mounting issues within a system."  *He*, 2024 WL 3708146 at *3 (citation and internal quotation marks omitted).  Defendants argue that Plaintiff's claim of unreasonable delay fails because courts have routinely held that the LIFO policy for adjudicating asylum applications is a "rule of reason."  (Defs.' Supp. Ltr. at 3.)  Indeed, the LIFO policy was implemented in an effort to curtail the growth of the USCIS's significant backlog of asylum applications by identifying and disposing of non-meritorious asylum claims promptly, before they can be added to the existing backlog.  (*See* USCIS Scheduling Policy.)  As such, courts in this circuit have held that the LIFO policy "is the byproduct of a reasoned attempt to address mounting issues with the asylum application process" and, thus, is a rule of reason that satisfies the first *TRAC* factor.  *Wu v. Mayorkas*, No. 22-CV-4436, 2024 WL 3557695, at *3 (E.D.N.Y. July 24, 2024) (quoting *Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020)) (internal quotations omitted); *see also Zheng*, 2024 WL 333090 at *6 ("[C]ourts have found that

---

[6] As a threshold matter, Plaintiff argues that it is premature for the Court to consider the *TRAC* factors on a motion to dismiss because the review of the *TRAC* factors is fact-intensive. (Pl.'s PMC. Resp. Ltr. at 6, ECF No. 7.) Indeed, there is no question that the analysis of the *TRAC* factors is generally fact-intensive.  Nonetheless, courts regularly resolve unreasonable delay claims on a motion to dismiss where the facts alleged cannot sustain such a claim.  *See, e.g. Ahmed v. Bitter*, No. 23-CV-189, 2024 WL 22763, at *7 (E.D.N.Y. Jan. 2, 2024) (citing *Kaur v. Mayorkas*, No. 22-CV-4514, 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023)) (holding that, "while fact-intensive, it is also not uncommon for courts to resolve unreasonable delay claims concerning visa adjudication on a motion to dismiss"); *see also He*, 2024 WL 3708146 at *3 (assessing *TRAC* factors and dismissing claim for unreasonable delay in the adjudication of an asylum application on a motion to dismiss).

the USCIS's use of LIFO in the asylum context is a rule of reason."); *Ying Yu Liu v. Wolf*, 19-CV-410, 2020 WL 2836426, at *8 (S.D.N.Y. May 30, 2020) (holding that the delayed adjudication of a plaintiff's asylum application "was the result of the LIFO rule, which was itself a reasoned response to a systemic crisis."). As such, the first *TRAC* factor weighs against Plaintiff's claim for unreasonable delay.

Under the second *TRAC* factor, the Court considers whether Congress has provided a timetable that "may supply content for [the first factor's] rule of reason." *TRAC*, 750 F.2d at 80. Defendants argue that there is no congressional timeline within which an asylum application must be adjudicated and, therefore, the second *TRAC* factor cannot support Plaintiff's claim for unreasonable delay. (Defs.' Supp. Ltr. at 3.) To be sure, the Immigration and Nationality Act ("INA") directs that "the initial interview or hearing on [an] asylum application shall commence not later than 45 days after the date an application is filed" and "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). However, the Court need not "ascribe much significance to this timetable" because "Congress stated that it did not create any substantive or procedural right to adjudication within any time period." *See Xu*, 434 F. Supp. at 53; 8 U.S.C. § 1158(d)(7). Accordingly, "[a]s the weight of authority on this issue has found, the timetables contained in § 1158(d)(5)(A) do not interfere with finding that the LIFO rule provides a rule of reason, insofar as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables rendered them non-binding." *Chen*, 2020 WL 6825681 at *5 (citations omitted); *see also Zheng v. Garland*, No. 22-CV-6039, 2024 WL 333090, at *6 (E.D.N.Y. Jan. 29, 2024) ("Congress intended that the timeline not apply while the USCIS is dealing with an exceptional level of asylum applicants.").

Under the third and fifth *TRAC* factors, the Court looks to the impact on human health and welfare and the nature and extent of the interests prejudiced by the delayed adjudication. *TRAC*, 750 F.2d at 80.  Defendants argue that Plaintiff fails to allege any harm to his health or welfare, or any other significant prejudice, caused by the delay.  (Defs.' Supp. Ltr. at 3.) Plaintiff alleges that the delay in the adjudication of his asylum application "leaves him in legal limbo" and prevents him from "making long term plans for the future."  (Compl. ¶ 25; *see also* Pl.'s PMC. Resp. Ltr. at 8–9.)  Plaintiff further contends that the delay affects his health and welfare because he "suffers daily psychological trauma not knowing if he can build a life in the U.S. or if he will be sent back to India where he will face religious persecution."  (*Id*.)  These sorts of allegations have been found insufficient to establish a significant prejudice or harm to Plaintiff arising from the delay in adjudicating his asylum application.  *See, e.g*., *Xu*, 434 F. Supp. at 54 (holding that a plaintiff's allegation that she suffered significant harm because she was not "receiving the full rights, privileges and benefits that she is entitled to as a seeker of asylum who has a meritorious claim" was not sufficient to weigh in favor of a finding of unreasonable delay); *De Oliveira v. Barr*, No. 19-CV-1508, 2020 WL 1941231, at *5 (E.D.N.Y. Apr. 22, 2020) (holding that plaintiffs' allegations that delayed adjudication of their asylum applications caused them "considerable anxiety and emotional distress" were not sufficient to weigh in favor of a finding of unreasonable delay).  So too here, the third and fifth *TRAC* factors do not support Plaintiff's claim of unreasonable delay.

Finally, the Court examines the fourth *TRAC* factor: "the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80. Defendants argue that affording Plaintiff an immediate interview would unjustifiably favor Plaintiff's application, permitting Plaintiff to "leapfrog" ahead of other applicants and

undermining USCIS's reasons for implementing the queue system in the first place.  (Defs.' PMC Ltr. at 2.)  Indeed, courts in this circuit routinely hold that, where granting a plaintiff's requested relief would simply place the plaintiff ahead of other similarly situated applicants, consideration of the fourth TRAC factor weighs against a finding of an unreasonable delay.  *See, e.g.*, *Zheng*, 2024 WL 333090, at *6 (holding that "an order in favor of the plaintiff would put her at the head of the queue and move all others back one space, resulting in no net gain.") (internal citations, alterations, and quotations omitted); *Al Saidi v. U.S. Embassy in Djibouti*, 544 F. Supp. 3d 289, 297 (E.D.N.Y. 2021) (holding that a court appropriately denied relief "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space."); *see also Xu*, 434 F. Supp. at 55 ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.").  Such would be the case here.

Having considered the *TRAC* factors, as well as the cause of the delayed adjudication, the Court finds that Plaintiff has failed to state a claim under the APA on the grounds that the adjudication on his asylum application is unreasonably delayed.  The Court further notes that, as Defendants highlight, courts in this circuit have held that delays of up to five years in the adjudication of asylum applications are not unreasonable.  *See, e.g.*, *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (holding that a five-year delay in adjudication of asylum application was not an unreasonable delay); *see also He*, 2024 WL 3708146, at *3 (holding that the delay of three years and four months in adjudicating an asylum application was not unreasonable "considering the current USCIS backlog"); *Xu*, 434 F. Supp. at 55 (holding that a three-year delay in the adjudication of an asylum application was not unreasonable).  Here,

Plaintiff's asylum application has been pending for under three years, far below the length of time that other courts have regularly found to constitute reasonable delays. For these reasons, Plaintiff's claim for unreasonable delay pursuant to § 706(1) of the APA must be dismissed.

**B. Arbitrary, Unlawful, or Exceeding Statutory Authority**

Plaintiff's claims that the LIFO policy is arbitrary, unlawful, an exceeds statutory authority fare no better. Pursuant to APA § 706(2), courts can set aside agency action if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). Defendants argue that, because courts have already held that the LIFO policy is a "rule of reason," Plaintiff's claims that the policy is arbitrary, unlawful, or exceeds statutory authority also fail. (Defs' PMC Ltr. at 3.) The Court agrees. Plaintiff's claims brought pursuant to § 706(2) of the APA fail for the same reasons the Court articulated above. *See Sharifi v. Blinken*, 731 F. Supp. 3d 433, 439 (E.D.N.Y. 2024) (analyzing a plaintiff's claims brought pursuant to § 706(1) and § 706(2) together because the claims are "substantively the same" in that they are challenging a purported unreasonable delay by USCIS). Therefore, Plaintiff's remaining claims pursuant to Section 706(2) of the APA must be also dismissed.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2025

/s/ LDH
LASHANN DEARCY HALL
United States District Judge